UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-033-TBR

CARL LEE ADKINS, JR.,                                                                      PLAINTIFF

v.

TERRY B. PEEDE,                                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Terry B. Peede's Motion for Summary Judgment. [R. 18.] Plaintiff Carl Lee Adkins, Jr., has responded, [R. 29], and the deadline for Peede to reply has passed. This matter is now ripe for adjudication. For the following reasons, Peede's Motion for Summary Judgment, [R. 18], is DENIED.

## BACKGROUND

This case arises from an incident which occurred at Kentucky State Penitentiary ("KSP") on October 22, 2016. [R. 1-1 at 2 (Complaint); R. 18-3 at 1 (Peede Affidavit).] According to Adkins, he requested to speak with the cell house supervisor that day at 3:30 A.M. in order to express his concern that somebody was tampering with his food. [R. 1-1 at 2.] When Defendant Peede appeared, Adkins expressed these concerns, to which Peede allegedly responded: "You piece of (word omitted) terrorize Americans, but can't handle what yall [sic] dish out, then you mother (word omitted) shouldn't engage in war . . .." Adkins claims that Peede then told a nearby officer, "Don't bother me with complaints from this check-in (protective custody) mother (word omitted) . . .." [*Id.*] Adkins concedes that he responded by "proclaiming his belief as a minority Muslim in the United States, while impulsively lashing of the tongue due to

embarrassment of being called a 'check in' (one who pleads to administration for protection) in front of a crowd of thirty-nine (39) other inmates in an acoustic dwelling." [*Id*.]

Adkins claims that this exchange caused many of the inmates "to scream, kick and beat on the bars and doors of their cells causing clamor." [*Id*.] Shortly thereafter, Adkins recalls that a team of seven to ten staff members "dressed in shoulder padding and helmets" removed him from his cell "with malicious and excessive force with the intent to degrade and cause harm out of machination." [*Id*. at 3.] Adkins alleges that Peede then falsely accused Adkins of spitting on him and ordered a "spit shield" to be placed over Adkins's head. [*Id*.] Adkins clothes were then removed using a seatbelt cuter, and he was dressed in a pair of paper boxers. [*Id*.; R. 18-3 at 2.] Afterward, Adkins was placed in a restraint chair in the shower. [R. 1-1 at 3; R. 18-3 at 2.]

Adkins alleges that while he was restrained, Peede "began to yank and pull Plaintiffs [sic] beard and speak obscene slurs directed at Plaintiff." [R. 1-1 at 3.] While Adkins was still restrained, a nurse was notified and examined his injuries. [*Id*.; R. 18-3 at 3.][1] Allegedly, Adkins informed the nurse that the restraints were too tight and requested that they be loosened, but his request was ignored when Peede responded "something to the effect that 'As long as he can move his arms back and forth, then the restraints do not need loosening.'" [R. 29-1 at 3 (Adkins Response).] Adkins states that the restraints caused "lacerations and abrasions to his wrist and ankles. The contusions of the wrist caused Plaintiff to request medical attention due to the shooting pains when the wrist is in motion. At times gripping writing utensils becomes difficult . . .." [R. 1-1 at 4.]

Peede's version of this incident is quite different. Peede avers that, on that date, Adkins was on "a 15-minute behavior watch related to his self-declared hunger strike," and Peede went to Adkins's cell in response to a call from Walk Officer Steven Mitchell that Adkins had covered

---
[1] Adkins claims this was "LPN Joanna Stewart." [R. 1-1 at 3.]

the windows of his cell. [R. 18-3 at 1.] Peede recalls that when he ordered Adkins to uncover his window, Adkins refused then "swore, spit at me and said, 'Suit up, bitch.'" [*Id.*] After Adkins continued to refuse to uncover his windows, Peede states that he obtained permission from the shift commander to form a team to enter Adkins's cell. [*Id.* at 2.] He also allegedly contacted the nurse in order to advise her she would be needed and ensure that "O.C. spray or an electronic device" could be used on Adkins. [*Id.*] Peede avers that Adkins was compliant with orders in being removed from his cell and put in a restraint chair. [*Id.*] Peede states that Adkins was examined by the nurse for injuries both at 3:30 A.M. and at 5:00 A.M., when he was placed back in his cell, and the nurse reported no injuries. [*Id.* at 3.]

On March 10, 2017, Adkins filed a pro se complaint against Peede alleging use of excessive force. [R. 1.] On December 19, 2017, Peede filed the Motion for Summary Judgment that is currently before the Court. [R. 18.]

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

3

party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the plaintiff's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the defendant satisfies his or her burden of production, the plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

Peede argues he is entitled to summary judgment because (1) he is protected from suit by qualified immunity, [R. 18-1 at 3-6], and (2) Adkins has failed to support his claims that Peede used excessive force against him, [*Id.* at 7-10]. The Court will address each argument in turn.

### A. Qualified Immunity

Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether qualified immunity is available to a defendant involves a two-step process: "[f]irst, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred." *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Then, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). In order for a law to be deemed

4

as "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell*, 308 F.3d at 602. In other words, "the unlawfulness [of the action] must be apparent." *Id.* The Supreme Court has stated that the sequence of these two steps is not mandatory: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although the Sixth Circuit stated that "a district court must address the question of qualified immunity prior to discovery," it clarified this notion by asserting that "where the issue of qualified immunity turns on contested issues of fact, its determination is not one for summary judgment." *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). Here, the issue of qualified immunity turns on a contested issue of fact. Specifically, the parties dispute whether a constitutional violation occurred. Peede claims that Adkins fails to support his allegation of excessive force with facts. [R. 18-1 at 4.] On the other hand, Adkins alleges that Peede used excessive force when Peede, along with seven to ten staff members dressed in shoulder padding and helmets, cut off his clothes, placed paper boxers and a spit mask on him, and put him in a restraint chair, which caused "lacerations and abrasions to his wrists and ankles." [R. 29-1 at 2-3.] Furthermore, Adkins alleges that while he was restrained, "Defendant Peede began yanking and pulling [his] beard while uttering obscenities at [him]." [*Id.* at 3.][2] As there are clearly

---

[2] The Court notes that harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4, 2008 U.S. Dist. LEXIS 118217 at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Thus, the obscenities Peede allegedly uttered at Adkins do not amount to a constitutional violation.

contested issues of material fact, it would be inappropriate for the Court to grant summary judgment at this early stage in the litigation. Thus, Peede's Motion for Summary Judgment as it pertains to qualified immunity is DENIED.

### B. Excessive Force

Peede also argues that "[t]he scenario described by plaintiff does not allege the use of excessive force." [R. 18-1 at 8.] Eighth Amendment claims by prisoners alleging excessive force must satisfy a two-prong standard. Initially, prisoners must show that the guard's actions were objectively harmful enough to create a constitutional claim. Second, the prison official's act must have been committed with the requisite state of mind. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The first, "objective," component to the standard requires that the pain inflicted be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "This is a 'contextual' inquiry that is 'responsive to contemporary standards of decency.' The seriousness of the injuries are not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 8–9) (internal citation omitted). While the second, "subjective," component does not have a fixed meaning, ultimately it is an analysis into the motivation of the action taken against the prisoner and if it was an "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*

*v. Albers*, 475 U.S. 312, 320–21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973)).

In measuring if the force used violates the protections of the Eighth Amendment, a court may consult a number of different factors. For instance, a court might use the gravity of the injury suffered by the inmate. *Id.* Other factors a court may consider include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* Finally, in reviewing a guard's actions during a prison disturbance, great deference should be paid to the "execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (quoting *Hudson*, 503 U.S. at 6).

As previously explained, the material facts concerning this claim of excessive force are heavily disputed. Furthermore, the Sixth Circuit has stated that cases in which summary judgment is granted before discovery are "extraordinary and not the norm." *Moore v. Shelby Cty., Kentucky*, 718 F. App'x 315, 320 (6th Cir. 2017). This is because "[a] summary judgment determination requires an inquiry into 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law,'" and "[c]ommon sense dictates that before a district court tests a party's evidence, the party should have the opportunity to develop and discover the evidence." *Id.* Here, the only evidence before the Court is an affidavit from either party and a note of barely three sentences from a nurse at the prison. [*See generally* R. 18-2; R. 18-3; R. 29-1.] Even with this small amount of evidence, there is still a factual dispute as to what occurred between Adkins and Peede on October 22, 2016. Clearly, the facts of this case require further development through

discovery. Thus, Peede's Motion for Summary Judgment as it pertains to the claim of excessive force is DENIED.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: Defendant Terry B. Peede's Motion for Summary Judgment, [R. 18], is **DENIED. A telephonic conference is set for August 31, 2018 at 8:45 A.M. Central Daylight Time. Parties must call 1-877-848-7030, then give Access Code 2523122 and #, then when prompted press # again to join the call.**

**IT IS SO ORDERED.**

cc: Counsel of Record
Carl Lee Adkins, Jr., Pro Se
214628
Eastern Kentucky Correctional Complex
200 Road to Justice
West Liberty, KY 41472